Timothy M. Keegan [11289]
Kathleen D. Weron [UT 8437 *Pro Hac Vice Pending*]
Christina Petria [UT 19047 *Pro Hac Vice Pending*]
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
15 W. South Temple, Suite 950
Salt Lake City, UT 84101
Telephone: 801.658.6100
Facsimile:  385.360.1707
tim.keegan@ogletree.com
kathleen.weron@ogletree.com
christina.petria@ogletree.com

*Attorneys for Plaintiff Zions Bancorporation National Assn.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZIONS BANCORPORATION NATIONAL ASSOCIATION,<br><br>      Plaintiff,<br><br>v.<br><br>ROSS FARR, an individual; HOMEREADY FINANCIAL, LLC, an Idaho limited liability company;<br><br>      Defendants. | Case No. 4:25-cv-592 |

## VERIFIED COMPLAINT

Plaintiff Zions Bancorporation National Association ("Zions" or the "Company"), by and through its undersigned counsel, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., alleges as follows against Defendants Ross Farr ("Farr") and HomeReady Financial, LLC ("HomeReady") (collectively "Defendants"):

## NATURE OF ACTION

Zions is one of the leading financial services companies in the United States, consisting of a collection of banks and financial services with operations across the country. Among its many services, Zions offers residential mortgage and construction loans in Idaho and throughout the Intermountain West.

From November 2016 through August 1, 2025, Defendant Farr worked for Zions as a Residential Mortgage and Construction Loan Officer serving the Greater Idaho Falls and Rexburg, Idaho areas. In this position of trust, Farr was given access to Zions' highly confidential, proprietary, and trade secret information, including sensitive nonpublic customer data, internal loan-processing methods, proprietary worksheets, commission reports, and business-development strategies.

Unbeknownst to Zions, Farr began laying the groundwork for a competing business while still employed. On January 3, 2025, Farr registered HomeReady Financial, Inc. with the Idaho Secretary of State. By February 2025, HomeReady had become a managing member of Idaho Mortgage Brokers LLC, alongside Coburn Realty, Inc. and Dwayne Coburn ("Coburn"). Despite these steps toward launching a competitor, Farr remained employed at Zions for another eight months, until abruptly resigning "effective immediately" on August 1, 2025 to open HomeReady in direct competition with Zions.

During this same period, between January 1, 2025, and his resignation on August 1, 2025, Farr transmitted more than 1,800 emails from his Zions account to his personal Gmail, his new HomeReady business account, and to Coburn. These emails—many of which remain under investigation—contained vast amounts of Zions' confidential and proprietary information. The materials included mortgage formulas, loan-scenario and refinancing analyses, cash flow

worksheets, and other internal tools; customer and prospect documentation for pending loan applications; compilations containing Social Security numbers and other consumer financial data; closed-loan files; commission reports; and even spreadsheets appearing to contain password credentials for Zions' systems. Farr began transmitting these materials as early as January 2025, months before his abrupt resignation to join HomeReady.

Through this coordinated course of conduct, Farr and HomeReady deliberately misappropriated Zions' confidential information and trade secrets, diverted business opportunities, and interfered with Zions' key customer and referral relationships. Defendants' unlawful actions have caused, and continue to cause, substantial and irreparable harm to Zions, including the loss of customer relationships, competitive advantage, business goodwill, and sensitive confidential information.

Zions brings this action to halt Defendants' ongoing misconduct and to remedy the harm already inflicted. Zions seeks preliminary and permanent injunctive relief to prevent further misuse of its confidential information and diversion of its business, as well as compensatory damages, punitive damages, treble damages where authorized, attorneys' fees, and all other legal and equitable relief available under Idaho and federal law.

**THE PARTIES**

1.     Zions is a national banking association with its principal place of business located at One South Main Street, Salt Lake City, Utah 84133-1109. Zions is licensed and authorized to do business, and does business, in Idaho. Zions maintains multiple branches in Idaho including, as relevant to this case, 149 W. Main Street, Rexburg, Idaho 83440 (the "Idaho Office").

2.     Defendant Ross Farr is an individual who resides at 2038 Davidson Lane, St. Anthony, Idaho 83445.

3. Defendant HomeReady Financial, LLC is an Idaho limited liability company with its principal place of business located at 30 S. 2nd W., Rexburg, Idaho 83440. HomeReady was formed and registered in January 2025 and is managed by Farr and is engaged in the mortgage lending business in direct competition with Zions.

## JURISDICTION AND VENUE

4. This action seeks to enforce Farr's contractual and legal obligations to Zions and to remedy Defendants' violations of applicable federal and Idaho state law.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Zions asserts a claim under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. This Court also has jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over Defendants Farr and HomeReady because each resides in Idaho, conducts business in Idaho, and/or committed the wrongful acts described herein in Idaho, causing injury in Idaho. HomeReady is an Idaho limited liability company with its principal place of business Idaho, and Farr is an individual domiciled in Idaho. All Defendants have purposefully availed themselves of the privileges of conducting business in Idaho and have engaged in conduct giving rise to the claims in this District.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants reside and/or conduct business in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### Zions' Business

8. Founded in 1873, Zions is the oldest financial institution headquartered in the Intermountain West. Zions provides traditional banking and innovative technology services to individuals and businesses, including residential mortgage and construction lending.

9. Zions invests substantial time and money to develop and maintain nonpublic business information, including: customer and prospect identities and contact information; referral source/realtor lists; customer-specific needs, preferences, and pricing; loan histories and closed-loan data; workflows, underwriting tools spreadsheets, formulas, and scenario and payment estimators; financial, sales, and marketing strategies; and compensation structures. This information derives independent economic value from not being generally known and is referred to herein as Zions' "Confidential Information" and, where applicable, "Trade Secrets."

10. Zions takes reasonable measures to protect its Confidential Information and Trade Secrets, including mandatory privacy and security training; policies restricting removal, use, and disclosure of sensitive information; technical access controls and monitoring; VPN and password protections; return-of-property and nondisclosure requirements; and need-to-know limitations.

11. Zions' Sensitive Information Privacy Policy requires employees to safeguard company, customer, consumer, and employee sensitive information; limits access to those with a legal right and business necessity; forbids removal from company premises without approval; mandates secure storage/transport; and requires proper destruction. Zions employees are required to acknowledge receipt of the Employee Handbook and Code of Conduct incorporating these obligations.

12. Zions' Employee Handbook and Code of Conduct establish core obligations of loyalty, confidentiality, and integrity that apply to all employees. Among other things, the Handbook requires employees to safeguard confidential and proprietary information; prohibits outside employment or activities that conflict with Zions' interests; forbids solicitation or diversion of Zions' customers or business opportunities; and requires employees to return all company property and information upon separation. Employees are required to acknowledge receipt of the Handbook and Code of Conduct and to comply with these standards as a condition of employment.

**Farr's Employment and Confidentiality and Non-Solicitation Agreement with Zions**

13. Zions hired Farr in November 2016 to serve as its Residential Mortgage and Construction Loan Officer in the Greater Idaho Falls and Rexburg, Idaho areas.

14. Farr worked for Zions until his abrupt resignation, without notice, on August 1, 2025.

15. To carry out his duties and responsibilities for Zions successfully, Zions entrusted Farr with highly sensitive, confidential, and proprietary information belonging to Zions, including customer financial data, borrower and builder contact lists, loan pipeline reports, internal pricing sheets, underwriting guidelines, and loan draw schedules.

16. Farr's responsibilities required him to cultivate and manage direct relationships with borrowers, builders, developers, and real estate professionals, all of which Zions considers proprietary business relationships developed at substantial expense and effort. Farr also had access to Zions' nonpublic strategies for originating, pricing, and managing residential mortgage and construction loans.

17. Defendant's position also gave him unique access to the Bank's existing and prospective customers, along with detailed knowledge of their financial circumstances, pending

6

transactions, closed loans, and borrowing needs. Defendant Farr was expected to maintain these customer relationships exclusively on behalf of Zions and agreed not to solicit such customers for his own benefit or for a competitor. Despite these obligations, upon information and belief, Farr has diverted, and continues to attempt to divert, such relationships to his new brokerage, thereby interfering with the Bank's contractual and prospective economic relations and misappropriating its trade secrets.

18. During his employment, for valuable consideration, Farr voluntarily entered into a Confidentiality and Non-solicitation Agreement ("Agreement") with Zions. The Agreement is contained within Zions' Employee Handbook and specifies that these are contractual obligations. Farr signed and acknowledged the Agreement and his contractual obligations.

19. Pursuant to the Agreement, Farr is prohibited from removing any proprietary data or information regarding the Company, its customers, accounts, services, vendors or suppliers in any form, whether hard-copy, digital, or in other electronic form and no information may be used regarding the Company's customers, accounts, services, vendors or suppliers in any manner or personal gain or to provide to others.

20. Specifically, the Agreement requires that "[w]hile employed with the Company, you are obligated to safeguard sensitive information in your possession as defined and further clarified in the Sensitive Information Privacy Policy." Further, "[d]uring employment, and when you leave the Company, you may not remove any proprietary data or information regarding the Company, its customers, accounts, services, vendors or suppliers in any form, whether hard-copy, digital, or in other electronic form. You also must immediately return all such information and records in your possession to the Company. You may not use any information you gain regarding

the Company, its customers, accounts, services, vendors or suppliers in any manner for personal gain or to provide to others, including without limitation any subsequent employers."

21. In addition, the Agreement sets forth Farr's obligations to Zions, which began upon the execution of the Agreement. Specifically, Farr's Agreement prohibits him from, directly or indirectly, soliciting Zions' employees, clients, or suppliers on behalf of the employee or a competing business for one year following the date Farr's employment with Zions ended.

22. In particular, the Agreement provides "[y]ou may not directly or indirectly solicit Company employees, customers, vendors or suppliers (any of which you directly learned of or dealt with as an employee of the Company) for yourself or a competing business for a period of one year following your termination date. The contents of this Section 11.10 are contractual obligations and are in force both while you are employed with the Company and after you leave the Company."

23. The Agreement is narrowly tailored to serve Zions' legitimate business interests.

24. In addition to his contractual obligations, Farr expressly acknowledged and agreed to Zions' Sensitive Information Policy, which required him to maintain the confidentiality of all nonpublic customer and bank information, to use such information solely for legitimate purposes on behalf of Zions, and to refrain from copying, transferring, or retaining such information for personal use or the benefit of any third party.

25. In addition, upon separation from employment, Farr agreed to return all Zions information, including "all records of any kind as well as any electronic, computing, technical, office or any other type of equipment the Company provided."

**Farr's Misappropriation, Breaches, and Resignation**

26. On August 1, 2025, Farr resigned effective immediately, stating he was "open[ing] [his] own brokerage," and shipped back Zions' laptop per IT instructions. In the same-day farewell email, Farr claimed he "ha[d] not solicited any of [his] past clients," but he acknowledged communicating with clients with loan "in the pipe" to announce his departure.

27. Zions' cybersecurity/insider threat monitoring alerted on August 1, 2025, to sensitive data (credit card and/or Social Security numbers) being sent to Farr's personal account. A subsequent investigation led by Zions' cybersecurity, privacy, response, and conduct teams identified eight-months' worth of concerning activity: more than 1,800 emails sent externally, including to Farr's personal email, HomeReady, and his business partner, Coburn.

28. The exfiltrated data included, among other things: a spreadsheet containing 46 customers' names, including Social Security numbers; a spreadsheet containing 297 loans; a spreadsheet of closed loans from 2024; internal loan-processing spreadsheets; formulas and scenario tools; payment estimators; cash-flow and refinancing analysis worksheets; workflow documentation; realtor and referral partner contacts; lists of prospects and leads; the Employee Handbook and Code of Conduct; and Zions' compensation structure. Farr engaged in an "email dump" on August 1, 2025, and Zions learned, for the first time, that Farr had been sending Zions' Confidential Information and Trade Secrets externally since at least January 2025.

29. Zions' investigation also identified evidence that Farr solicited customers on his last day and was building his competing business for months while still employed.

30. Public records reflect that on or about January 1, 2025, seven months before resigning, Farr registered his brokerage, HomeReady, with an office in Rexburg, Idaho.

31. Around the same time, HomeReady became a managing member of Idaho Mortgage Brokers LLC, which is owned by Coburn. Zions identified Coburn as a recipient of multiple emails containing Zions' Confidential Information and Trade Secrets while Farr was still employed. Upon information and belief, HomeReady and Farr have used and continue to use Zions' Confidential Information and Trade Secrets in the operation of their business.

32. Upon information and belief, Farr and HomeReady have used, are using, and/or threaten to use Zions' Confidential Information and Trade Secrets to solicit Zions' customers and referral partners and to operate and build their competing mortgage business, causing ongoing and irreparable harm to Zions, including loss of goodwill, competitive harm, and costs associated with investigation, containment, and regulatory/privacy response arising from the exposure of sensitive customer information.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (Against Defendant Farr)

33. Zions incorporates by reference each of the allegations in paragraphs 1 through 32 as if fully set forth therein.

34. Farr knowingly and voluntarily entered into the Agreement with Zions, which is a valid and enforceable contract supported by good and sufficient consideration, including employment and/or continued employment with Zions, access to Zions' Confidential Information, including confidential customer information, training and information on Zions' business methods, strategies, expertise, intellectual property, and other means of success.

35. The Agreement prohibits Farr from, *inter alia,* removing or using Zions' proprietary and confidential information during and after employment and mandates the return of all such information upon separation.

10

36. The Agreement also prohibits Farr from directly or indirectly, inducing or soliciting any customer with whom he had contact or for whom he had performed services during the term of his employment with Zions for a period of one year after the termination of his employment with Zions.

37. The primary purpose of the Agreement is to reasonably protect Zions' legitimate business interests including, but not limited to, (1) the protection of the goodwill Zions has created with its current customers and prospective future customers, and (2) the preservation of Zions' Confidential Information, and/or proprietary information, including that used to assist in retaining the relationships of Zions' current clients, expanding business with Zions' current customers, and securing prospective customers in the future.

38. The Agreement is reasonable in scope and duration and is necessary to protect Zions' legitimate protectable interest in its current and prospective customer relationships and the goodwill of its customers.

39. Zions fulfilled all obligations under the Agreement with Farr.

40. Farr breached the Agreement by, *inter alia,* (a) removing, retaining, and using Zions' proprietary and confidential information; (b) disclosing that information to his personal email, to HomeReady, and to Coburn; (c) failing to return and certify destruction of all such information; and (d) directly or indirectly soliciting Zions' customers and referral partners.

41. In entering into this Agreement with Zions, Farr expressly acknowledged that the breach of the Agreement will irreparably damage Zions for which monetary damages may not be an adequate remedy and agree that Zions shall be entitled to remedy.

42. Farr's breach of his Agreement has caused and will continue to cause irreparable harm to Zions in a way that cannot be reasonably ascertained or quantified and for which monetary damages alone are not an adequate remedy.

43. Farr's breach has also caused and will continue to cause, damages to Zions in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Breach of the Duty of Loyalty
### (Against Defendant Farr)

44. Zions incorporates by reference each of the allegations in paragraphs 1 through 43 as if fully set forth therein.

45. While employed, Farr owed Zions a fiduciary and common-law duties of loyalty and trust as its agent and employee, including the duty to refrain from competing with Zions or assisting its competitors, and to act at all times in Zions' best interest.

46. Farr breached these duties by, among other things, surreptitiously emailing to his personal email account, HomeReady, and to Coburn's email accounts, proprietary and confidential information, including Zions' loan tools, analyses, as well as confidential information concerning existing and prospective customers, to assist him in his new brokerage firm.

47. Upon information and belief, Farr also diverted business opportunities for his own benefit and the benefit of his new brokerage firm while still employed by Zions. These actions constitute wrongful competition and disloyalty independent of, and in addition to, any misappropriation of Zions' Trade Secrets, and has caused Zions' substantial damages and irreparable harm.

**THIRD CAUSE OF ACTION**
**Violation of the Defend Trade Secrets Act**
**18 U.S.C. ¶ 1836** *et seq.*
**(Against All Defendants)**

48. Zions incorporates by reference each of the allegations in paragraphs 1 through 47 as if fully set forth herein.

49. The material Defendants misappropriated from Zions constitutes valuable trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) ("DTSA"), including because such materials comprise nonpublic customer and prospect lists and contact information; closed-loan data; referral/realtor lists; internal loan-processing spreadsheets, formulas, workflows, and tools; pricing/compensation structures; and marketing/strategy information, which derive independent economic value from not being generally known and not readily ascertainable.

50. This information constitutes trade secrets under the DTSA because Zions derives independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use.

51. Zions took reasonable measures to keep these Trade Secrets secret, including policies and training, access controls, monitoring, and confidentiality and return-of-property obligations.

52. Zions has invested substantial time and money in developing and maintaining its trade secrets.

53. Farr misappropriated Zions' Trade Secrets by acquiring them through improper means (in breach of duties and policies) and using/disclosing them without the consent for the benefit of himself, his new brokerage firm, and his business partner, Coburn. The Trade Secrets relate to products and services used in interstate commerce.

13

54. The systematic trade secret theft orchestrated by Defendants was not merely willful and malicious, but represented a calculated campaign designed to steal Zions' competitive advantages not only because Farr had access to Zions' Confidential and Trade Secret Information but was actively taking Zions' Confidential and Trade Secret Information to use in his new brokerage firm, HomeReady, and benefit both HomeReady and his business partner, Coburn, to unfairly compete against Zions.

55. As a consequence of the foregoing, Zions has been injured and will continue to suffer damages and irreparable harm. Farr's conduct was willful and malicious, entitling Zions to exemplary damages and attorneys' fees.

### FOURTH CAUSE OF ACTION
**Violation of the Idaho Uniform Trade Secrets Act
Idaho Code 48-801 et seq.
(Against All Defendants)**

56. Zions incorporates by reference each of the allegations in paragraphs 1 through 55 as if fully set forth herein.

57. The material Defendants misappropriated from Zions constitutes valuable trade secrets under the Idaho Uniform Trade Secrets Act ("IUTSA"), Idaho Code § 48-801(5), including because such material comprises nonpublic customer and prospect lists and contact information; closed-loan data; referral/realtor lists; internal loan-processing spreadsheets, formulas, workflows, and tools; pricing/compensation structures; and marketing/strategy information.

58. Zions derives independent economic value from its Trade Secrets not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from their disclosure or use.

59. Zions has undertaken and continues to undertake, reasonable efforts to safeguard its trade secrets.

60. Over a period of one year, while employed by Zions and with contractual and common law duties owed to Zions, sent Zions' Confidential Information and Trade Secrets to his personal email and to HomeReady and Coburn's email addresses.

61. Defendants' acquisition, disclosures, and use without consent constitute "misappropriation" under Idaho Code § 48-801(2) because Defendants knew, or had reason to know, that Zions' Trade Secrets were acquired by improper means, and without consent from Zions.

62. Zions is entitled to injunctive relief, damages, exemplary damages for willful and malicious misappropriation, and attorneys' fees.

### SIXTH CAUSE OF ACTION
**Tortious Interference with Existing and Prospective Economic Relations**
**(Against All Defendants)**

63. Zions incorporates by reference each of the allegations in paragraphs 1 through 62 as if fully set forth herein.

64. At all relevant times, Farr was employed by Zions pursuant to an agreement that required him to maintain the confidentiality of Zions' information, refrain from soliciting Zions' customers for his own benefit, and act at all times in Zions' best interests.

65. Defendant HomeReady knew of Farr's contractual and fiduciary obligations to Zions. Despite this knowledge, HomeReady intentionally and improperly induced Farr to breach his duties to Zions by diverting customers and business opportunities away from Zions to HomeReady and Coburn, and by misusing Zions' confidential forms, tools, and customer information for the benefit of their competing brokerage.

66. In addition, upon information and belief, Defendants intentionally interfered with Zions' existing and prospective economic relations with borrowers, builders, and referral sources by collaborating with Farr to solicit such business while Farr was still employed at Zions.

67. As a direct and proximate result of Defendants' interference, Zions has suffered damages, including lost business opportunities, loss of customer goodwill, and economic harm in an amount to be proven at trial.

68. Defendants' interference constitutes wrongful conduct independent of, and in addition to, any misappropriation of trade secrets.

## PRAYER FOR RELIEF

THEREFORE, Zions respectfully asks this Court to grant the following:

1. A preliminary and permanent injunction:

    a. Enjoining Defendants, and all persons acting in concert or participation with them, from contacting or soliciting any of Zions' current clients or prospective clients with whom they worked while employed at Zions;

    b. Enjoining Defendants, and all persons acting in concert or participation with them, from disclosing, using, or distributing any of Zions' Confidential Information and Trade Secrets, including customer and prospective customer lists, closed-loan information, Zions' tools and worksheets, Zions' business strategies, or other proprietary data obtained by Defendants;

    c. Ordering Defendants, and all persons acting in concert or participation with them, to return to Zions all documents, data, records, or other materials—whether hard-copy or electronic, including without limitation all originals, copies, extracts, summaries, photographs, recordings, videos, screen captures, backups, and other reproductions—that

contain, reflect, embody, or are derived in whole or in part from any Zions' Confidential Information or Trade Secrets.

   d. Ordering Defendants, and all persons acting in concert or participation with them, to work cooperatively with Zions' IT Department and legal counsel to delete all of the offending emails and other ESI and/or documents from all of their computers, personal and/or mobile devices and cloud storage.

   e. Compelling Defendant Farr, and all persons acting in concern or participation with him, to comply with his contractual obligations to Zions as identified in his Agreement with Zions.

   f. An order requiring Defendants, and all persons acting in concert or participation with them, to preserve all documents and electronically stored information related to the claims and defenses in this action; and

   g. Extending the term of the obligations of Defendant Farr under his respective Agreement for one year or as equity requires.

2. The entry of judgment in favor of Zions and against Defendants;

3. Compensatory damages, including lost profits and consequential damages (including investigation, remediation, and privacy responses costs);

4. Exemplary damages under DTSA and IUTSA for willful and malicious misappropriation;

5. Disgorgement and restitution of all benefits unjustly obtained;

6. An award of pre- and post-judgment interest, costs, and attorney's fees as allowed by law; and

7. Such further relief as the Court deems just and proper.

DATED this 21st day of October, 2025.

                                                  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

                                                  */s/ Timothy M. Keegan*
                                                  Timothy M. Keegan
                                                  Kathleen D. Weron
                                                  Christina Petria
                                                  *Attorneys for Plaintiff*

## **VERIFICATION**

The undersigned, as representative for Zions Bancorporation National Assn. in the above action, certifies under the laws of the State of Idaho that he has read and reviewed the above Verified Complaint and has authorized its filing and service. The contents are true and correct to the best of the undersigned's knowledge, information, and belief.

DATE: 10/21/2025

_____
Russell Mason